W. E. CALDWELL CO., Appellant, v. STECKEL & SON, W. J. STECKEL, and THE EXCHANGE BANK, Appellees.

**Sales:** AMBIGUOUS CONTRACT: EXTRINSIC EVIDENCE. On an issue as to the purchase price of certain property, where the contract rests upon correspondence between the parties and is susceptible of the construction that each article is of the price named or that the sum stated covered the cost of all, a question for the jury is presented and extrinsic evidence is competent to explain the agreement; and this comprehends all prior and subsequent correspondence on the subject, receipt of the goods with knowledge of the seller's interpretation of the price, and the usual and customary price of such articles.

*Appeal from Davis District Court.*— HON. F. W. EICHELBERGER, Judge.

MONDAY, JUNE 10, 1907.

ACTION to recover the purchase price of three cypress tanks, with certain equipment therefor. Defendants offered to confess judgment for the sum of $17.02, which being denied the case went to trial, resulting in a directed verdict for defendants, and plaintiff appeals.— *Reversed.*

*T. P. Bence,* for appellant.

*H. C. Taylor,* for appellees.

DEEMER, J.— The contract upon which this action is bottomed rests upon correspondence which passed between the

parties.   Plaintiff is engaged in the manufacture and sale of towers, tubs, tanks, etc., in the city of Louisville, Ky., and defendants are residents of Davis county, in this State.   In some manner W. J. Steckel as cashier obtained a list of tanks and prices from plaintiff, and under date of May 3, 1904, wrote plaintiff as follows:  " May 3, 1904.   Some time ago we got list of tanks and figures from you, but has been mislaid.   We have two or three customers who want something in that line for watering cattle, say 8, 9, 10, 11, or 12 feet in diameter, and something like 2 to 2½ feet high.   Will be glad to have your respective prices on same."

This was followed by defendants' letter of May 10th, reading:

We are in receipt of your favor of the 3d, and are very pleased to herewith inclose you our jobber's discount sheet, giving best discounts on goods listed in catalogue, of which we send you copy under separate cover.   The discounts quoted for cypress tanks are for tanks built of firsts and seconds clear lumber, which is a specially choice quality. We also have a ' second quality ' of cypress lumber, which we call selects, which is exactly the same as the regular tank stock mentioned above, except it admits of a considerable number of knots.   These are thoroughly sound and tight, however, and do not affect the durability or tightness of the tanks a particle.   Our discount for this grade of cypress tanks is 30 per cent.   The white pine tanks are made of a select grade of sound knotted dry stock.   Shipping weights of two-inch tanks are given in catalogue, and inch and a half cypress tanks weigh about 20 per cent. less.   Our freight rate to your city is 52½ cents.   We shall be glad to submit net delivered prices whenever desired, and send detailed specifications for anything in this line.   We hope to be favored with an order from you.

To this plaintiff responded, under date of May 5, 1904, in this wise:

May 10, 1904.   Yours of the 5th inst. at hand.   We hardly know what grade of tanks to figure on.   Can tell you

what we want them for, and then will be glad to have your suggestions and prices delivered here. We think that 3 tanks, each 10 ft. in diameter and 2 feet deep, will answer our purpose. We want them for horses and cattle to drink from on our farm. Possibly it might be better to make them 2 ft. and 5 in. deep. We would like two of them delivered at Paris Station on the Rock Island in this county and one at this place on the Wabash or the C., B. & Q. Kindly advise us what you think we ought to have, as they are needed to set on the surface of a good platform and water from the windmill pumps drop into them. Awaiting your further favors, which kindly make clear and explicit.

To this plaintiff responded as follows:

We have your letter of the 10th, and think it would probably pay in the long run for you to use the tanks of the regular tank grade of cypress. We inclose prices accordingly for both the sizes you mention, and including freight allowance to both points you name. We are considerably behind orders, but these are small tanks that it would not take long to run out, and we could ship them in about ten days if you were in a hurry.

Under date of May 12th, plaintiff also wrote as follows:

Mr. W. J. Steckel, Cashier Exchange Bank, Bloomfield, Iowa. Dear Sir: In reply to yours of the 10th, will say that we will furnish three standard tanks to be 10 ft. 0 ins. diameter, 2 ft. 0 ins. deep, inside measurements, 2 ft. 5 in. high outside, made with a slight taper, and constructed of selected tank grade Louisiana red gulf cypress, 2 in. thick before dressing, and provided with the necessary steel hoops of ample number and strength, with one pair of our patent draw lugs, or band fasteners for each; all got out, ready to go together, knocked down and crated, and delivered on cars here, with freight allowance to Paris Station for the sum of $30.45. We will furnish three of our standard tanks to be 10 ft. 0 in. in diameter, 2 ft. 5 in. deep, inside measurements, 2 ft. 10 in. high outside, otherwise as above specified, for the sum of $34.85. We will furnish our standard subjoist or dunnage for the bottom of the tank to rest upon, these pieces to be of proper number and size for that purpose,

and all-heart long-leaved yellow pine, and to be cut to the circle of the tank, dressed four sides, and painted one coat of green fire proof paint, all delivered on cars here, with freight allowance to Paris Station, for the sum of $5.95. We find we can make the same price with freight allowance to either point. Terms 30 days net cash from day of shipment. Yours truly.   .   .   .

Defendants' response was as follows:

May 14, 1904. Replying to your favor of 12th inst., we accept the first proposition at $30.45. You do not say how many flat steel hoops, but we would like to have three to each tank if you will so provide, each equipped with your patent draw lug you speak of. The subjoists we will provide here, but thank you for your offer therefore. Send two of the tanks to Paris Station on the Rock Island in this county (don't get this confused with Paris post office in Linn county, Iowa), and the third tank at Bloomfield. This last point you can reach on the Wabash or C., B. & Q. We would like to have these tanks shipped as soon as you can, having immediate use therefor. Kindly acknowledge receipt of order. Yours truly, W. J. Steckel, Cashier.

Plaintiff acknowledged this as follows, under date of May 17th: " We thank you for order of the 14th, and will ship according to your directions. There will be two hoops to each tank which is the standard number and all that is necessary for tanks only 2 feet deep."

And under date of June 10th plaintiff notified defendants of the shipment of the tanks, inclosed bills of lading and invoices showing the total purchase price to be $91.35. Plaintiff's agent testified that he sent catalogue and discount sheets and price list to defendants May 5, 1904, with plaintiff's return card thereon, which catalogue showed the price of the tanks, after deducting all discounts and including freights, to be $30.45 each. Defendants denied receiving this catalogue, but this denial simply took the question of the receipt of the catalogue and price lists to the jury. One of the defendants admitted the receipt of the bills of lading and of

invoices for the three tanks, which invoices showed that two tanks were shipped as directed at the invoice price of $60.90 and one at the price of $30.45. Defendants received these bills June 12, 1904, which was some five or six days before the tanks arrived. Plaintiff was not permitted to introduce these in evidence, as we understand it, although the fact of their receipt was admitted by defendants while on the witness stand and in a letter subsequently written.

After the receipt of the tanks, and after the receipt of the bills of lading and invoices, defendant wrote plaintiff as follows:

June 17, 1904. In reply to your favor of 10th inst., would say I just returned from the depot at this place, and inspected the tank, consigned here. Several packages of staves were bursted, and the pieces loose. The station agent said he presumed they were all there, but we cannot tell until the tank is erected. I am informed that the other two tanks have reached Paris Station, but have not been up to the farm yet to inspect them, but hope, when all are taken apart and put up, that we will find everything satisfactory. In regard to the bills you send, would say there is a mistake in them, as you bill the three tanks to us $91.35, whereas your proposition of May 12, 1904, is $30.45 for the three. Please send correct bill per said proposition, which we accepted under date of May 14.

With knowledge of the situation as above indicated defendants or some of them accepted and used the tanks, and, when sued for the agreed price, claimed that it was $30.45 for the three and not $91.35 as claimed by plaintiff. Aside from rulings on evidence, which need not here be noted, it will be observed that the sole question in the case is whether the tanks were sold for the aggregate sum of $30.45, or was there enough testimony to take the case to the jury on the proposition that the price was to be $30.45 each, or at the rate of $30.45 each. The trial court ruled that the letters of date May 12th, containing plaintiff's proposition, and of May 14th, containing defendant's acceptance, constituted the

entire contract, and that according to the terms thereof defendants' obligation was to pay $30.45 for the three. Other correspondence between the parties was eliminated, as also was defendants' conduct in accepting the tanks after knowledge that plaintiff was claiming that the agreed price was $91.35, and not $30.45. We think the entire correspondence and conduct of the parties should have been considered in the solution of the questions presented. If the case stood alone upon plaintiff's offer of May 12th, there might be difficulty in finding that the purchase price was any other sum than that named, to-wit, $30.45, but it will be noticed that defendant's acceptance was of the first proposition, at $30.45. This was the instrument which completed the contract. Had the proposition been made in that form and accepted, there would have been an ambiguity which would have sent the case to the jury upon extrinsic evidence as to the intention of the parties to be gathered from all the facts and circumstances of the case, including the acts and conduct of the parties. This would include all prior and subsequent correspondence, the receipt of the goods by defendants after knowledge of plaintiff's interpretation of the matter, whether or not defendants received and read the catalogue sent them by plaintiff, and the usual and customary price of such tanks as were ordered shipped. This is squarely held in *Martin v. Olive,* 82 Iowa, 122. See, also, *Bank v. Shaver Company,* 111 Iowa, 138.

Plaintiff's proposition to sell construed in its entirety and with reference to subjoists, etc., for bottom of tank (not tanks) to rest upon. for the sum of $5.95, is not, standing alone, entirely clear, but, taking the proposition and acceptance together, there is such a case, we think, as should have gone to the jury. Defendants' conduct in accepting the tanks after the receipt of plaintiff's invoices showing its interpretation of the entire correspondence is very significant.

Plaintiff offered to show the usual price of such tanks

in the market, but was not permitted to do so. It is now said that the witness was incompetent, but, as defendants used this witness to show the price paid him for tanks of another size and dimensions, evidently to sustain their contention that the price $30.45 was not unreasonable, it does not lie in their mouths to say that the witness was disqualified. In reading the entire record, we are impressed with the notion that the case should have gone to the jury for them to determine, there being an ambiguity in the writings, whether or not the price was $30.45 for the three or $30.45 for each of the three tanks. This must be the rule if we are to follow the cases hitherto cited.

One further thought seems conclusive on this proposition. Was the diameter, depth, height, etc., of the tanks to be the size of each or the aggregate size of all? Surely, when we look at the entire correspondence, there appears to be such an ambiguity as to take the case to a jury.

The trial court was in error in directing a verdict, and in its rulings on evidence; and the judgment must therefore be, and it is, *reversed.*